RASMUSSEN *et ux.* v REEDY.

1. Where the subsequent evidence clearly established that defendant's father was his agent in the negotiations leading up to the transfer of lands sought to be set aside, the prior admission of evidence as to false statements made by the father to the plaintiffs to induce the transfer was harmless.

2. Where defendant's father, as his agent, made statements to plaintiffs that the land which defendant wished to exchange with them was level, except on the east side, and, in showing the land to one of the plaintiffs, pointed out a road at the foot of a bluff as the west boundary, which statements were false, the plaintiffs were entitled to rely on such statements, without personal examination, and hence were entitled to have the transfer rescinded on discovery of the fraud.

(Opinion filed November 21, 1900.)

Appeal from circuit court, Union county. HON. JOSEPH W. JONES, Judge.

Acton by Lars Rasmussen and Frederekka Rasmussen, husband and wife, against John L. Reedy, to set aside and cancel a deed. From a judgment for plaintiffs, and from an order denying a motion for a new trial, defendant appeals. Affirmed.

The facts are stated in the opinion.

*French & Orvis,* for appellant.

The findings of a court upon a question of fact are now treated

as equaly conclusive with the verdict of a jury. Randall v. Burke, 4 S. D. 253; Black Hills Mer. Co. v. Gardiner, 5 S. D. 246.

Fraud is never presumed, and where it is alleged, the facts sustaining it must be clearly made out. Farren v. Churchill, 135 U. S. 601; Southern Dev. Co. v. Selva, 125 U. S. 247; Colton v. Stanford, 23 Pac. 16.

*E. C. Ericson* and *Keith & Warren,* for respondents.

Where a vendor of lands undertakes to point out to the pui chaser the boundaries, he is under obligations to point them out correctly, and if he does not do so he is liable in damages. Davis v. Nuzum, 40 N. W. 497; Bird v. Klemer, 41 Wis. 134; Cotzhauzer v. Simon, 1 N. W. 473; Gibbons v. Wilder, 43 N. W. 520; Knoppen v Freeman, 50 N. W. 533; Wilson v. Carpenter's Admin. 21 S. E. 243; Crump v. Mining Co. 56 A. M. Dec. 116.

CORSON, J. This is an action to set aside and cancel a deed executed by the plaintiffs to the defendant of certain land owned by them in Union county, which was conveyed by them to the defendant in exchange for certain land owned by him in Yankton county. Judgment for plaintiffs, and defendant appeals. In the fall of 1898 a contract was entered into between the parties by which the plaintiffs agreed to convey their Union county land to the defendant in exchange for his Yankton county land. The plaintiffs claim that they were induced to enter into the contract by fraudulent representations as to the boundary lines of the defendant's land, the principal misrepresentation being that the western line of said land ran along the foot of a bluff, whereas in fact it ran along the top of the bluff, from 15 to 30 rods west of the line pointed out as the boundary by the defendant, and that the land included between the line so pointed out and the true line was comparatively worthless, and that the plaintiffs, in

making said exchange, relied upon said representations. It is claimed that within a short period of the execution of the deed the plaintiffs discovered that the western line of said land had been falsely represented to them, and that they immediately tendered back $100 received by them from the defendant as payment of the difference in value between the two tracts of land, and tendered to the defendant a deed to said land, which was refused, and the plaintiffs instituted this action. The case was tried to a jury, to whom were submitted two questions. The only one we deem material in the decision of this case reads as follows: "Did James Reedy, when showing Lars Rasmussen, plaintiff, the Yankton county land, represent and state to him that the west line of the Yankton county land laid along the traveled track at the foot of the bluff? Ans. Yes." The court adopted this finding and found in addition that: "James Reedy is the father of the defendant John L. Reedy, and that on September 29, 1898, the said James Reedy, acting for and at the request of the defendant herein, arranged with the plaintiff, Lars Rasmussen, to take him on the ensuing day, to-wit: September 30, 1898, to certain lands in Yankton county, South Dakota, owned by the defendant, and to show said plaintiff the same, for the purpose of effecting a trade thereof for the lands in the first finding described, * * * That on September 30, 1898, the said James Reedy, acting at the request of, with the knowledge of, and in behalf of the defendant, took the plaintiff, Lars Rasmussen, to Yankton county to view and inspect said land, in order to accomplish a trade. That at said time the plaintiff was in ignorance of where the boundary lines of said land were, and did not know how or where the lines thereof run, except as then stated and represented to him by the said James Reedy. That on said 30th day of September, 1898, and for the purpose of inducing the plaintiff to sell and exchange said land in the first finding

described for said Yankton county land, the said James Reedy, show-
ing said land at the request of and for the defendant, and with in-
tent to deceive and defraud the plaintiffs, represented and stated to
said Lars Rasmussen that the west boundary line of said Yankton
county land laid and ran along the traveled track at the foot of cer-
tain bluffs, running near the western boundary of said Yankton coun-
ty land so owned by defendant. That at the same time, and for the
same purpose, the said James Reedy, acting at the request of the de-
fendant in showing said lands, stated to the plainttiff, Lars Rasmus-
sen that said Yankton county land included no bluff land at all on the
west side thereof. That on the evening of September 29, 1898, at the
request of the defendant, the said James Reedy, acting in behalf of
the defendant in arranging for such visit to inspect said Yankton
county land, stated and represented to both of the plaintiffs that said
Yankton county land included no bluff land along its western side at
all, and that the western boundary of said land was a certain track
running at the foot of a range of bluffs. That the plaintiffs confided
in the truth of said representations so made as to the lay and boun-
dary lines of said land, and believed them to be true, and relied there-
on,  *  *  *"  and the plaintiffs believing such representations to
be true, and relying thereon, executed the deed sought to be cancel-
ed.  "That in truth and in fact the said traveled track near the west-
ern line of said Yankton county farm, and lying at the foot of said
bluffs, was not the west boundary line of said farm, but laid from ten
to thirty rods east thereof. That in truth and in fact the western por-
tion of said Yankton county farm was not level land, but a strip
from ten to thirty rods wide, running along nearly the entire west
side of said farm, was composed of high and steep bluffs, with unde-
sirable and almost worthless soil, and totally unfit for farming pur-
poses." The court concludes, as matter of law, that James Reedy

acted as the agent of the defendant in making the alleged false and fraudulent representations concerning said land, that the conveyance by the plaintiffs to the defendant is null and void, and that the plaintiffs are entitled to judgment as prayed for in their complaint.

The appellant relies for a reversal upon three propositions: First, that James Reedy, the father was not authorized by the defendant to make the representations complained of by plaintiffs, and therefore the statements alleged to have been made by him to the plaintiffs as to the boundaries of the land were not binding upon the defendant, and were inadmissible in evidence; second, that the evidence was insufficient to support the findings of the court; third, if the representations were made as claimed, the plaintiffs had no right to rely upon the same, as one of them had made an examination of the land in person.

Lars Rasmussen, when on the stand as a witness in his own behalf, was asked certain questions in regard to statements made to him and his wife by James Reedy the day prior to going with him to examine the land. These questions were objected to on the part of the defendant on the ground, among others, that the representations made by James Reedy could not be given in evidence until it was first shown that he was authorized to make them by the defendant, or that the defendant was present at the time the representations were made. These objections were overruled, and the defendant excepted. The defendant subsequently moved to strike out the evidence as to the statments made by James Reedy, which was overruled and the defendant again excepted. The order in which evidence is introduced is a matter largely within the discretion of the trial court, and this court will not reverse a case, though it may appear that the evidence was inadmissible at the time, providing it subsequently appears in the course of the trial that the evidence became properly ad-

missible.    While the evidence admitted against the objections of counsel was, under the strict rules of evidence, inadmissible at that stage of the trial, the subsequent evidence clearly established the fact that James Reedy, the father, was acting throughout the whole transaction as the agent of his son, as found by the trial court, or that his acts were ratified by the defendant.    Hence, under the rule stated, the error, if it was such, was not a reversible error.    In Crump v. Mining Co., 7 Grat. 352, 56 Am. Dec. 116, the supreme court of Virginia uses the following language:    "That a person professing to act as agent for another does so wholly without authority, or transcends the authority actually conferred upon him by his principal, is no reason for enforcing the contract against the other party, when obtained from him by false and fraudulent representations.    In the words of a judicious writer:    'Contracts made for the benefit of another, but without his privity or consent, may be rejected or affirmed at his election.    But by making the election to affirm it he adopts that which is detrimental as well as that which is for his benefit.    And, in seeking to enforce contracts entered into by agents, the principal is subject to have them impeached by any conduct of his agent which would have that effect if proceeding from himself.    Every species of fraud, misrepresentation, or concealment therefore, in the agent, affects the principal's right to recover.'    Paley, Ag. 324, 325."    It clearly appears from the evidence in the case at bar that the principal conversations resulting in the exchange of the lands in question were had between James Reedy and the plaintiff, and that in the transactions and conversations he assumed at least to be acting for the defendant, and the defendant in effect affirmed his acts and declarations by entering into the contract.    After a careful examination of the evidence, we are of the opinion that the findings of the court are sustained by the same, or at least that the preponderance of the evi-

dence is not against the findings. It appears from the evidence that the first conversation in regard to the exchange of these lands was had between James Reedy and the plaintiff, Lars Rasmussen. Reedy called the latter into his residence and introduced the subject of this exchange. On the same day he stated to his son, the defendant, that he had had a conversation with the plaintiff upon this subject, and the son suggested that, as the father was going to Yankton the next day, he go over to the plaintiffs' home and arrange with them to have Lars go with him and examine the Yankton county land. The evidence tends to prove that while at the home of the plaintiffs that evening, in the presence of Lars and his wife, James Reedy. in speaking of the land owned by his son, described it as level, excepting a few small bluffs on the east side. The following day Lars and James went together to Yankton and examined the land. The defendant sent a telegram to his brother, Thomas Reedy, who resided at Yankton, to meet them and go with them to see the land. The plaintiff, Lars Rasmussen, testified that he was taken upon the land, and that a road or wagon track passing along the foot of a bluff was pointed out to him by the father as the western boundary line of the land, and that the father said there were no bluffs on that part of the land. James Reedy denied that he made these statements, and Thomas Reedy, although in the same carriage with them states that he did not hear any such conversation. But, taking into consideration the fact that James Reedy had, according to the testimony of Lars and his wife, stated the evening before that the land was all level, excepting a few small bluffs on the eastern side, we think the court was justified in finding that the misrepresentations claimed to have been made were in fact made by James Reedy, both at the home of the plaintiffs and on the land.

The appellant strenuously contends that, as Lars examined the

land in person, he must have observed that the road did not follow any section line, and that it could not have been the west boundary line of the tract; but it appears from the evidence of all the witnesses who were present when he examined the land that he did not go along the westerly line of the same, and did not examine the track with any degree of care, until he went back subsequently to the execution of the deed, and then discovered that the western line of the tract was from fifteen to thirty rods west of the road, when he immediately attempted to rescind the sale. Assuming, therefore, that the court was correct in finding that the representations claimed to have been been made by James Reedy that the western boundary line was along the road or track were in fact made, and were not true, was the appellant authorized to rely upon that statement, in view of the fact that he had examined the land himself? While, perhaps, as to the character of the soil, value of the land, etc., the plaintiff might have not been justified in relying upon the representations of Reedy, as he had a full opportunity to examine the land himself, yet as to the boundary lines a different rule prevails Boundaries are not supposed to be known to persons examining the land, and can only be ascertained by them, ordinarily, by a survey, or by taking the statements of other parties upon that subject. James Reedy, therefore, if he made any statement as to the boundary was bound to make a truthful statement, and the plaintiff had a right to rely upon that statement. The Supreme Court of New Jersey, in Turner v. Houpt, 53 N. J. Eq. 526, 33 Atl. 28, says: "No man is justified, either in morals or in law, in knowingly making a false descriptive statement about the subject matter of a proposed contract, which may influence the mind of the other party in the transaction. No party has any right, either in law or in morals, to rely either upon the ability or the opportunity of the other party to discover the falsehood of his repre-

sentations, and thus avoid injury from it." In Speed v Hollingsworth, 54 Kan. 436, 38 Pac. 496, the court says: "The trend of the decisions of the courts of this and other states is towards the just doctrine that where a contract is induced by false representations as to material existent facts, which are made with the intent to deceive, and upon which the plaintiff relied, it is no defense to an action for recission, or for damages arising out of the deceit, that the party to whom the representations were made might, with due diligence, have discovered their falsity, and that he made no searching inquiry into the facts. 'It matters not,' it has well been declared, 'that a person misled. may be said, in some loose sense, to have been negligent;' * * * for it is not just that a man who has deceived another should be permitted to say to him, 'You ought not to have believed or trusted me,' or, 'you were yourself guilty of negligence.'" Davis v. Nuzum, 72 Wis. 439, 40 N. W. 497, 1 L. R. A. 774; Bird v. Kleiner, 41 Wis. 134; Cotzhausen v. Simon, 47 Wis. 103, 1 N. W. 473; McGibbons v. Wilder, 78 Iowa, 531, 43 N. W. 520. In the last case the supreme court of Iowa held that the plaintiff was entitled to rely wholly upon the representations of the defendant as to the location of the land, and that an instruction that failure on the part of the plaintiff to make further investigations would defeat her recovery was erroneous. In the case of Wilson v. Carpenter's Adm'r, 91 Va. 183, 21 S. E. 243, the supreme court of that state says: "No man is bound by a bargain into which he has been deceived by false and fraudulent representations. Whenever a purchaser has been induced by a material misrepresentation of the vendor to buy, he has a right to repudiate the contract—a right correlative with that of the vendor to disaffirm the sale when he has been defrauded. Courts of equity are always open to afford relief in such cases, and false representation of a material fact constituting an inducement to the contract, on

which the purchaser had a right to rely, is always ground for rescission of the contract by a court of equity." Crump v. Mining Co., supra. The law as stated in these decisions is substantially embodied in our code, in section 3589, Comp. Laws. The judgment of the court below and the order denying a new trial are affirmed.