**Sarah D. AASLAND and Delton W. Aasland, Plaintiffs and Appellants,**

v.

**The COUNTY OF YANKTON, a public corporation of the State of South Dakota, its agents, servants and employees, Defendants and Respondents.**

No. 12569.

Supreme Court of South Dakota.

Argued May 11, 1979.

Decided June 28, 1979.

Douglas R. Bleeker, of Shandorf, Bleeker, Boldt & Koch, Mitchell, for plaintiffs and appellants; E. M. Bubak, Tyndall, on brief.

Thomas E. Alberts, of Engel & Alberts, Avon, for defendants and respondents.

DUNN, Justice.

This case involves an action brought by landowners Delton W. Aasland and Sarah D. Aasland (plaintiffs) for a declaratory judgment regarding the public or private status of a road running through their property in Yankton County and for an injunction against Yankton County (defendant). From a judgment dismissing plaintiffs' complaint and enjoining plaintiffs from blocking public access to the road, plaintiffs have appealed. We affirm.

The road that is the subject of this action was conveyed to defendant in a right-of-way grant executed on November 17, 1898, by John W. Schneider. The grant was filed in the office of the register of deeds on February 6, 1899, and a copy was also filed with the Highway Department Office in Yankton, South Dakota. When the register of deeds transcribed the right-of-way grant into the county's record, he left out portions of the correct description. The effect of these omissions in recordation was that the right-of-way was moved one-quarter mile east from the right-of-way grant and the course of the southern portion of the right-of-way was changed somewhat.* The road contractor, however, did not rely on the incomplete recorded description to build the road. The road was constructed in accord-ance with the correct description contained in the original deed. The road was constructed over rough terrain. It followed the lay of the land and contained some backfills, cutbanks, and culverts. The road was built from the northern portion of the property now owned by plaintiffs through the river breaks to the Missouri River. People used to live along the southern portion of the road near the river and used the road for ingress and egress. In the 1950s, the United States Corps of Engineers condemned the land along the southern portion of the road to accommodate the rising waters resulting from the Gavins Point Dam coming-on line. In 1936, the property upon which the road is located was sold for nonpayment of 1928 general taxes, and tax deeds were acquired by the Danforth Company. The property remained in the Danforth family until December 6, 1976, when it was deeded to plaintiffs—daughter and son-in-law of the grantor. Plaintiff Delton W. Aasland had managed the property for approximately twelve years before he and his wife purchased it. Plaintiffs had been familiar with the property for twenty years and had visited the property and traveled the road numerous times. About five years prior to the time that this lawsuit was filed, plaintiffs placed a gate across the road at its northernmost point. The present action was precipitated by this denial of access by plaintiffs and defendant's interest in using the road to accommodate a rural water system which seeks to place a pumping plant at the southern portion of the road and use the road as access to the station, as well as a right-of-way for a pipeline from the pumping station. The trial court found that the road is currently neglected and in a bad state of disrepair, but further found that the road is passable.

Plaintiffs first contend that defendant should be bound by the right-of-way description recorded in the office of the register of deeds. Since there has never been a road built on the right-of-way

* Both the correct and erroneous descriptions locate the right-of-way on the property owned by plaintiffs.

which was incompletely described in the register of deeds' record, plaintiffs argue that defendant has abandoned the right-of-way of record and that the road in existence is a private road. The trial court found that it would be "absurd to allow an erroneous recordation to be effective over the correct instrument" especially when the correct instrument was produced at trial and not challenged by plaintiffs. We agree. To accept plaintiffs' contention, we would be sacrificing substance for form, and valid interests in property could be invalidated by a mere mistake in recordation. The recordation of an instrument serves as constructive notice of what the instrument actually contains. SDCL 43–28–15; *Shelby v. Bowden,* 16 S.D. 531, 94 N.W. 416 (1903). The recordation of the right-of-way grant, although incomplete, was sufficient to put plaintiffs on notice that a right-of-way existed across their land and that the right-of-way instrument should be sought out and investigated.

Plaintiffs next contend that the poor condition of the existing road evidences an intended abandonment by defendant of its right-of-way through nonuse. Plaintiffs refer us particularly to the original release of right-of-way deed which contains the provision that "when said County [defendant] shall cease to use the same for the purpose above mentioned the said land shall revert to said grantors or their assigns." Plaintiffs argue that upon nonuse and abandonment by defendant, the right-of-way reverts back to plaintiffs as successors in interest to the grantor. Mere nonuser of an easement acquired by grant, however long continued, does not constitute an abandonment unless such nonuser is accompanied by an affirmative and unequivocal act of the public indicative of an intent to abandon and inconsistent with the continued existence of the right-of-way. 2 Thompson on Real Property, § 443, pp. 767–779. In *Haley v. City of Rapid City,* 269 N.W.2d 398, 400 (S.D.1978), we expressed the following:

> The rule has long been established in this state that having once been lawfully established a public way can be vacated or abandoned only by some lawful method and that the burden of proof is on one obstructing a lawfully established public way to show vacation or abandonment. *Lowe v. East Sioux Falls Quarry Co.,* 25 S.D. 393, 126 N.W. 609.

See also, *Neill v. Hake,* 254 Minn. 110, 93 N.W.2d 821 (1958). Once the right-of-way was deeded to the public for its use as a roadway, the overriding public interest in the road mandated an express action or "lawful method" employed by the public before such a right-of-way could be divested. The requirement of a "lawful method" apparently refers us to statutory provisions for vacation of a roadway such as those embodied in SDCL 31–18 or SDCL 31–3. Since there is no indication that defendant pursued any "lawful method" of abandonment, as specifically provided for by statute, the trial court was correct in refuting plaintiffs' contention and in finding no abandonment of the right-of-way by defendant.

Plaintiffs' final contention is that defendant acquired the property through tax deed proceedings in 1936, which merged the right-of-way easement with fee title resulting in extinguishment of the right-of-way easement. Plaintiffs further contend that when defendant failed to reserve the right-of-way in the tax deed to the Danforth Company, it conveyed the property free of the right-of-way easement. In the present case, there was never any vesting of fee title in defendant. There was no indication from the abstract of title that the property involved in this action was bid in by defendant's treasurer in the name of defendant after failure to redeem or assign the property and after the statutory time had run from the date of the tax sale. See, SDCL 10–25, SDCL 10–26, SDCL 7–31. Therefore, there was never a conveyance to defendant of the property by tax deed. The title to the property was simply divested from the original owner in favor of the Danforth Company upon payment of delinquent taxes and after the statutory period for redemption had expired.

■ Accordingly, there was no merger of title arising from the 1898 deed of a right-of-way for a public road and the tax procedures used to acquire and dispose of the property for failure to pay delinquent taxes. Nor could this so-called tax deed in 1936 from Yankton County to Danforth Company have extinguished the easement across the plaintiffs' land.

From 1928 to 1936, the period when these delinquent taxes were assessed, the following statute was in effect:

The several township and county assessors in each county in this state shall, in assessing lands for taxation through or over which any railroad or public highway shall run, deduct from the entire area of such land the amount of land embraced within the limits of the right of way of such railroad or public highway, and assess to the owner of such land through or over which such right of way or other highway extends, only the amount of such land less the amount so deducted: Provided, that this section shall not apply to highways running upon section lines.

S.D. Rev.Code 1919, § 6715.

It should be noted that this statute provided specifically for public highways which did not run along section lines. The assessor is conclusively presumed to have performed his duty under this statute and deducted any assessment on lands where a public highway was placed. *Alvin v. Johnson,* 241 Minn. 257, 63 N.W.2d 22 (1954); *Hayes v. Gibbs,* 110 Utah 54, 169 P.2d 781 (1946).

We have established above that this right-of-way for a public road was deeded to Yankton County on November 17, 1898, and has never been the subject matter for a legal abandonment. Accordingly, when Yankton County acquired this land for non-payment of taxes in 1936, it could only acquire the land that was subject to taxes. Its subsequent transfer to the Danforth Company in 1936 could only transfer title to property it had acquired for failure to pay taxes as no merger of titles could be established. This could not include the road that had been acquired in 1898 for the use of the public and which had never been the subject of assessment or tax.

The judgment of the trial court is affirmed.

All the Justices concur.