Marty R. LUNSTRA, Plaintiff
and Appellant,

v.

CENTURY 21 GKR–LAMMERS REAL-
TORS, Benjamin H. Lammers, Leroy
Kruse, and Irma Pohl, Defendants and
Appellees,

and

Bill G. Kruse and Sheryl
Kruse, Defendants.

Marty R. LUNSTRA, Plaintiff
and Appellant,

v.

CENTURY 21 GKR–LAMMERS REAL-
TORS, Benjamin H. Lammers, Leroy
Kruse, Irma Pohl and Bill G. Kruse,
Defendants,

and

Sheryl Kruse, Defendant and Appellee.

Nos. 16179, 16247.

Supreme Court of South Dakota.

Considered on Briefs Dec. 1, 1988.

Decided June 21, 1989.

Michael B. Crew of Crew & Crew, Sioux Falls, for plaintiff and appellant; Cynthia J. Ahrendt of Crew & Crew, Sioux Falls, on the brief.

Barbara Anderson Lewis of Woods, Fuller, Shultz & Smith, Sioux Falls, for defendants and appellees Century 21 GKR–Lammers Realtors, Benjamin Lammers, Leroy Kruse and Irma Pohl.

Dennis Duncan of Zimmer & Duncan, Parker, for defendant and appellee Sheryl Kruse.

MORGAN, Justice.

Marty Lunstra (Lunstra) appeals from summary judgments entered against him in his actions for damages allegedly arising from his purchase of residential real property from Bill and Sheryl Kruse (Sellers) through the offices of Century 21 GKL–Lammers Realtors, Benjamin H. Lammers, Leroy Kruse and Irma Pohl (Realtors). We affirm.

On July 8, 1983, Sellers listed with Realtors their residential property located at 8009 Oak Trail Road, Sioux Falls, South Dakota, also described as Lot 102 [1] of Oak Trails Addition, a platted subdivision. As listing broker, Leroy Kruse obtained information regarding the property from Sellers, which was published in the Sioux Falls Listing Book. As to lot size, the listing stated: "Irregular aprox. 3½ acres."

Lunstra first viewed the property during an open house held there in August 1983. In May 1984, after several months of negotiations, Lunstra's offer to purchase the property for $125,000 was accepted by Sell-

---

1. This lot was an eccentrically shaped lot situated on a cul-de-sac at the end of Oak Trail Road in the wooded environs on the south of Sioux Falls in Lincoln County.

ers. On June 28, 1984, Lunstra moved in [2] and the transaction was closed on July 6, 1984.

On May 30, 1986, Lunstra filed separate complaints against Realtors and Sellers alleging that, in the course of selling him the property, Realtors and Sellers had made "false and fraudulent misrepresentations" about the property. Basically, the alleged misrepresentations were as follows: (1) that the property consisted of 3.5 acres whereas, in fact, it consisted of 2.2 acres; and (2) that the boundaries which had been specifically identified were not as specified.

In the meantime, Sellers had been divorced. A default judgment was ultimately taken against Bill Kruse who failed to answer. Realtors and Sheryl Kruse moved for summary judgments in their respective actions. The trial court granted both motions, holding that: (1) Lunstra had been provided a legally sufficient description of the property; (2) Lunstra had actual or constructive notice of all information contained in the plat on record including boundaries and number of acres involved; (3) Lunstra inspected the property and agreed to purchase the same in its 'as is' condition; and (4) Lunstra accepted an unambiguous deed describing the real property and that all prior negotiations are merged in that deed.

On appeal, Lunstra raises two issues: 1) Whether a purchaser's claim for damages against sellers, based upon fraud and misrepresentation in representing the quantity and boundaries of real estate, is barred by the recording of a plat which correctly describes the real estate; and
2) Whether sellers are liable for the misrepresentations of their realtor agents.

We first define our scope of review from an order granting summary judgment.

[O]ur scope of review on appeal is not under the 'clearly erroneous' doctrine, but rather under the strict standards attendant upon entry of summary judgment as delineated in *Wilson* [*v. Great Northern Railway Co.*, 83 S.D. 207, 157 N.W.2d 19 (1968)]:

(1) Evidence must be viewed most favorable to the nonmoving party;

(2) The burden of proof is on the movant to show clearly that there is no genuine issue of material fact and that he is entitled to judgment as a matter of law;

(3) Summary judgment is not a substitute for a court trial or for trial by jury where any genuine issue of material fact exists;

(4) Surmise that a party will not prevail upon trial is not sufficient basis to grant summary judgment on issues which are not shown to be sham, frivolous or so unsubstantial that it is obvious that it would be futile to try them;

(5) Summary judgment is an extreme remedy which should be awarded only when the truth is clear and reasonable doubts touching the existence of a genuine issue as to material fact should be resolved against the movant;

(6) When no genuine issue of fact exists, summary judgment is looked upon with favor and is particularly adaptable to expose sham claims and defenses.

*Nizielski v. Tvinnereim*, 429 N.W.2d 483, 485 (S.D.1988) (quoting *Time Out, Inc. v. Karras*, 392 N.W.2d 434, 436–37 (S.D. 1986)).

From our review of the record, we are of the opinion that there are no material issues of fact. On July 29, 1975, a plat of the Oak Trails Addition was recorded in the Lincoln County Courthouse.[3] In 1983, Sellers purchased Lot 102 and built a home. Lunstra attended an open house in the fall of 1983. When asked about acreage and boundaries, Realtors identified "approximate" boundaries and "approximate" acre-

**2.** Lunstra was permitted to move in early because he had sold his house and had to give possession before the Kruse sale could be closed.

**3.** Appended as Appendix 1 is a copy of the relevant portion of the plat of Oak Trail Addition as recorded.

age from information given by Sellers. Several offers and counter offers were made.[4] In late May 1984, Lunstra ultimately made an offer of $125,000 to purchase Lot 102, Oak Trails Addition. Sellers accepted Lunstra's written offer to purchase. A deed correctly describing the real estate was delivered, accepted and recorded by or on behalf of Lunstra.[5]

■ For his first issue, Lunstra argues that in the absence of actual notice of the boundaries and acreage he is entitled to rely upon Realtors' representations. As a corollary, he further argues that the Realtors were under an obligation to substantiate the accuracy of their information obtained from Sellers. In response, Realtors and Sheryl Kruse argue that notice was given by the filing and recording of the plat; therefore, constructive notice must be imputed to Lunstra as a matter of law.

In *Fullerton Lumber Co. v. Tinker,* 22 S.D. 427, 432, 118 N.W. 700, 703 (1908), this court, relying on statutory provisions identical in content to SDCL 7-9-8 and -9, stated that:

> While in some jurisdictions it has been held by the courts that a party purchasing property is only charged with constructive notice of conveyances made in the chain of his title, such a ruling is not applicable in this state, in view of the provisions of our Code before quoted, and the purchaser must be held here as charged with notice of all the information that might have been obtained by an examination of all the indexes required to be kept by the register of deeds relating to the property.

In somewhat that same vein and in a more recent decision, *Aetna Life Ins. Co. v. McElvain,* 363 N.W.2d 186, 189 (S.D.1985) (citing 66 Am.Jur.2d *Records & Recording Laws* § 145 (1973)), we stated:

> The constructive notice furnished by a recorded instrument, so far as every material fact recited therein is concerned, is equally as conclusive as would be actual

notice acquired by a personal examination of the recorded instrument or actual notice acquired by or through other means.

The legislature has defined circumstances constituting constructive notice in SDCL 17-1-4, which provides:

> Every person who has actual notice of circumstances sufficient to put a prudent man upon inquiry as to a particular fact, and who omits to make such inquiry with reasonable diligence, is deemed to have constructive notice of the fact itself.

In this case, the plat was properly recorded and contained a correct description of the boundaries. "The recordation of an instrument serves as constructive notice of what the instrument actually contains. SDCL 43-28-15." *Aasland v. County of Yankton,* 280 N.W.2d 666, 668 (S.D.1979). Lunstra's reliance on *Rasmussen v. Reedy,* 14 S.D. 15, 84 N.W. 205 (1900) is misplaced, inasmuch as Lunstra conceded that Realtors' boundary line locations given him at the open house were "approximations" as was the size of the lot shown on the information sheet. In *Rasmussen,* the true boundary was represented to be along a certain fence line. In *Aasland,* where the recordation of a right-of-way grant was incomplete, we held that the existence of a road was sufficient to put purchaser on notice to require investigation of the right-of-way instrument. We feel that if the exact location of the boundaries was a material consideration in Lunstra's offer to purchase, he had a duty to inquire. *Allen v. Green,* 229 Va. 588, 331 S.E.2d 472 (1985).

■ With respect to the amount of acreage contained in the lot, we agree with the trial court that all prior negotiations merged in the unambiguous warranty deed which correctly described the property sold and conveyed. In *Nelson v. Gregory County,* 323 N.W.2d 139, 141-42 (S.D. 1982), we stated:

---

4. All documentation referred to the property by its legal description or by street address. Nowhere does a reference to acreage appear.

5. Appended as Appendix 2 is a copy of a "survey" apparently made on Lunstra's behalf by his lender which was delivered to him on or soon after the closing date.

The doctrine of merger provides that upon delivery and acceptance of an unambiguous deed, all prior negotiations and agreements are deemed merged therein. (Cites omitted.) This court has held that it will apply this doctrine subject to exceptions. (Cite omitted.) The exceptions are the existence of fraud or mistake or the existence of collateral contractual provisions or agreements which are not intended to be merged in the deed.

Granted that the difference between 3.5 acres and 2.2 acres is more than a minimal variance, Lunstra had ample opportunity to view the premises. He even occupied the premises for a week prior to closing the transaction. More importantly, in none of the several offers to purchase executed by Lunstra was any reference made to the size of the lot. The warranty deed that he accepted described the property in the same manner that it was described in his offers, thus barring any allegation of fraud. We find that the trial court correctly applied the doctrine of merger with respect to the question of acreage.

Under the circumstances of this case, Lunstra is charged with constructive notice of the correct boundaries and any reference to the size of the lot merged into the warranty deed that was delivered and accepted. Therefore, his actions in fraud and misrepresentation are barred. Because the actions are barred as a matter of law, we need not reach the issue of agency.

We affirm.

WUEST, C.J., and HENDERSON, J., concur.

SABERS, J., dissents.

MILLER, J., deeming himself disqualified, did not participate.

SABERS, Justice (dissenting).

I dissent because summary judgment was improper against the claims of negligent and fraudulent misrepresentation.

This case presents some "good news" and some "bad news" to realtors.

The "good news" is solely for the benefit of the individual realtors who absolutely escape liability without a trial despite serious allegations of negligent and fraudulent misrepresentations. One misrepresentation was that this Sioux Falls residence contained approximately 3.5 acres when in fact it contained only 2.2 acres. The second misrepresentation concerned specific boundaries pointed out to Buyer which were false. The majority opinion glosses over both misrepresentations and excuses them for various reasons, including merger and constructive notice of the plat recorded in the Lincoln County Register of Deed's office. The problem with the "good news," such as it is, is that it produces "bad news."

The "bad news" is bad for all realtors generally. It relegates the real estate profession to third class status or below. It tells the public that realtors "can't be trusted," and that "buyer beware" is again the law when dealing with a realtor. Worse yet, it excuses realtors from performing basic duties to reasonably investigate properties before making representations concerning same. More specifically, it violates and holds for naught two key rules of the South Dakota Real Estate Commission. The first rule, ARSD 20:56:05:29, states:

> On taking a listing, a licensee shall substantiate that the information taken in the listing agreement is accurate. As far as latent defects are concerned, it is not a violation of this section if the licensee discloses to the buyer that the listing information or parts of the listing information are solely the representations of the seller.

The second key rule, ARSD 20:56:05:31, provides:

> A licensee may not make a substantial or willful misrepresentation to a buyer that is injurious to the buyer.

Genuine issues of material fact clearly exist concerning violations of these rules, SDCL 20–9–1, *Restatement (Second) of Torts* § 552 (1977), and negligent and fraudulent misrepresentations.

The "bad news" of the majority opinion destroys established South Dakota prece-

dent concerning reliance on statements relating to boundaries, *Rasmussen v. Reedy,* 14 S.D. 15, 84 N.W. 205 (1900), and quantity of property, *Ernster v. Christianson,* 24 S.D. 103, 123 N.W. 711 (1909). Finally, the "bad news" overwhelms and destroys the right of an injured party to his day in court in violation of the South Dakota Constitution. I would reverse and remand for a trial so that the "good news" of a fair trial could be shared by all and justice could be properly served.

APPENDIX 1

453

APPENDIX 2

MARTY LUNSTRA
8009 OAK TRAIL ROAD
SIOUX FALLS, SOUTH DAKOTA

LEGAL DESCRIPTION: LOT 102 OAK TRAILS ADDITION SECTION 11-100-49 LINCOLN COUNTY, SOUTH DAKOTA

| | |
|---|---|
| DRAWN BY | D.H. |
| APPROVED BY | DAN |
| DATE | 7-7-84 |
| PROJECT NUMBER | 84598 |
| SHEET | 1-1 |

NOTES

BUILDING AND SITE IMPROVEMENT SETBACK VIOLATIONS ARE NOT VERIFIED OR NOTED AS AN ENCROACHMENT. BUILDING AND SETBACK DIMENSIONS SHOWN ARE APPROXIMATE AND SHALL NOT BE USED FOR CONSTRUCTION PURPOSES. THE RESEARCH OF EXISTING EASEMENTS OF RECORD WAS NOT PERFORMED. THE DEEDED LEGAL DESCRIPTION WAS SURVEYED, JUNIOR & SENIOR RIGHTS OF ADJACENT OWNERS WAS NOT RESEARCHED.

SURVEYOR'S CERTIFICATE - I, THE UNDERSIGNED, DO HEREBY CERTIFY THAT I HAVE SURVEYED THE ABOVE DESCRIBED PROPERTY AND THAT I AM A REGISTERED LAND SURVEYOR UNDER THE LAWS OF THE STATE OF SOUTH DAKOTA.

DANIEL A. NORMAN    REG. NO. 3029

**DANIEL A. NORMAN**
CONSULTING CIVIL ENGINEER
AND LAND SURVEYOR
1724 SHELLYNN DRIVE
SIOUX FALLS, SOUTH DAKOTA
PHONE 605-336-807A

SCALE: 1"=100'
FOUND IRON PIN ●
SET IRON PIN ○