# Staunton.

SOUTH AND WESTERN RAILROAD CO. v. MANN AND OTHERS.

September, 10, 1908.

Absent, Keith, P.

1. DEEDS—*Construction—Ambiguous Language—Parol Evidence.*—In case of ambiguity in the language of a deed, the deed will be construed most strongly against the grantor and in favor of the grantee. Moreover, parol evidence is always admissible to identify, explain, or define the subject-matter of a grant, for without such evidence it would be impossible to give effect to the intention of the parties.

2. DEEDS—*Construction—Case in Judgment.*—In this case a grant was made by the appellee to the appellant's grantor of "a strip of ground extending for such width on each side of the center line of said railroad, with such additional width at cuttings and embankments as may be required for the construction and maintenance of a double track railroad through and over said grantor's tract of land, situated on Clinch river on the late survey of F. E. Montague * * . Said strip of ground to be laid out in accordance with the survey of said company's engineers, with the right to the company to make such variations in the line of said survey as may be deemed needful to secure the best location for the road. For any of said grantor's houses, barns or buildings of any kind to be moved, said grantors are to move at their own expense." The question to be decided is, what land passed by virtue of that conveyance.

   *Held:* By fair construction of the deed, aided by the extrinsic testimony with regard to the subject-matter set forth in the opinion of the court, including the testimony of experts to ascertain the center line of the double track, and the width of ground on each side thereof required for the construction and maintenance of such a road, it conveyed a strip of ground through the farm of the appellees, 33 feet in width on each side of an initial line parallel with and 6½ feet west of the Montague center line of location of the single track.

Appeal from a decree of the Circuit Court of Scott county. Decree for the complainants.   Defendant appeals.

*Reversed.*

*Phlegar & Powell* and *Irvine & Morison,* for the appellant.

*W. S. Cox,* for the appellees.

Whittle, J., delivered the opinion of the court.

The primary purpose of this suit was to injoin the appellant from locating and constructing a railroad over the land of the appellees on Clinch river, in Scott county, Virginia, not included within the metes and bounds of a strip of 2.91 acres conveyed by them to the appellant by deed of February 13, 1907, for a right of way for a railroad and other railroad purposes.

The appeal is from a decree which undertakes to define and establish the rights of the parties with respect to the matters in controversy.

A number of questions are raised by the pleadings, but the paramount issue involves the exact quantity and precise location of an approximately parallel strip of ground to the 2.91 acres which was conveyed by the appellees to the Charleston, Cincinnati and Chicago Railroad Company (commonly known as the "3 C Company") predecessor in title of the appellant, by deed of April 22, 1889, for the construction and maintenance of a double track railroad.   The appellant contends that the two parcels of ground are, for the most part at least, coterminous; and the fundamental objection to the ruling of the circuit court is that, while it holds that the appellant is entitled to a right of way over the appellees' farm under the last-mentioned deed, it fails to define the extent of that right. Nevertheless, the decree declares, that should the appellant

transcend its authority—though an injunction will not lie to prevent the encroachment (Va. Code, 1904, sec. 1105-f, (11); *J. R. & K. Co.* v. *Anderson,* 12 Leigh 278)—the appellees may resort to actions at law to recover damages for any trespasses that may be committed by the appellant outside of the right of way. In other words, the decision relegates the appellant to another forum to answer in damages for exceeding rights which are left undetermined.

The testimony satisfactorily explains the causes for delay in construction of the railroad by appellant's predecessors, and fully repels any intention on their part to surrender or abandon their rights under the deed of 1889, which eliminates that issue from the case and leaves for our consideration the sole question: What land was acquired by the appellant by virtue of that conveyance?

The deed conveys to the "3-C Company," "A strip of ground extending for such a width on each side of the center line of said railroad, with such additional width at cuttings and embankments as may be required for the construction and maintenance of a double track railroad through and over said grantors' tract of land, situated on Clinch river on the late survey of F. E. Montague * * * . Said strip of ground to be laid out in accordance with the survey of said company's engineers, with the right to the company to make such variations in the line of said survey as may be deemed needful to secure the best location for the road. For any of said grantors' houses, barns or buildings of any kind to be moved, said grantors are to move at their own expense."

Brief reference to some of the elementary principles of law touching the construction of deeds generally may be helpful in the interpretation of this instrument. For instance: It is a familiar rule of interpretation that, in case of ambiguity, the deed will be construed most strongly against the grantor and most favorably to the grantee. Moreover, extrinsic evidence is always admissible in aid of construction when the words of

the deed can only be applied to facts ascertainable by such evidence. This is obviously a rule of necessity, for by no other means can the language employed be made to speak the minds of the parties.

The rule is thus formulated in 17 Cyc. 724: "Parol evidence is always admissible when it is necessary in order to identify, explain or define the subject-matter of a grant * * * , for without such evidence it would be impossible to give effect to the intentions of the parties." *Carrington* v. *Goddin,* 13 Gratt. 587; *Reuséns* v. *Lawson,* 91 Va. 226, 235, 21 S. E. 347; *New River Mineral Co.* v. *Painter,* 100 Va. 507, 42 S. E. 300.

Applying these well-known principles to the writing in question, with the aid of extrinsic testimony, we cannot fail to identify with reasonable certainty the ground intended to be included in the deed. As we have seen, it conveys a strip of land through the farm, extending for such width on each side of the center line of the railroad, with such additional width at cuttings and embankments as may be required for the construction and maintenance of a double track railroad on the Montague survey. We must, therefore, invoke the testimony of experts to assist us in establishing the center line of the double track railroad; and also to determine what width of ground on each side of that line would be required for the construction and maintenance of such a road.

The "3-C Company" located and partly constructed the roadbed for a single track railroad under its purchase, and the expert testimony informs us that the center line of a double track railroad, according to the location and plans of construction adopted by the "3-C Company," (which admittedly must control in this controversy), means a center line between the two tracks forming the double track; that the usual distance between centers of the two main tracks is 13 feet, and the center line of the double track would, therefore, be 6½ feet from the center of each track. It likewise appears, that owing to the proximity of the river on the easterly side of the first track (which would expose the embankments of an additional track on that side to

high water) the proper location for the second track would be on the westerly or up-hill side of the original track.

The testimony also shows, that although the needful space is variable, a right of way at least 66 feet wide would be required, and is essential for the proper construction and maintenance of such a railroad through the appellees' farm as is contemplated by the deed and called for by the plans of the "3-C Company;" and that a less quantity of ground would be wholly inadequate for those purposes.

It is insisted, however, that such width could not have been intended by the appellees, because it would have taken part of their yard and necessitated the removal of the dwelling house.

At the date of the deed, the statute forbade the condemnation of land for right of way of a railroad company within 60 feet of a dwelling; and that circumstance is shown to have induced the company to acquire this particular property by purchase, and at a higher price than was usually paid for similar rights of way in that locality. The evidence is conflicting as to whether the stipulation for the removal of buildings at the expense of the grantors was, or was not, intended to include the dwelling house; yet recourse to the foregoing rule of interpretation, that when language is doubtful the deed will be construed most strongly against the grantor, must have resolved that issue in favor of the appellant. But the question at last is only material in its bearing upon the interpretation of the deed of 1889, since the dwelling was unquestionably embraced by the deed of February 13, 1907, and by subsequent agreement between the parties the appellees have been permitted to remove the building to another location.

The conclusion of the whole matter is that, by fair construction of the deed of April 22, 1889, aided by extrinsic testimony with regard to the subject-matter, it conveyed to the "3-C Company" (whose rights the appellant has acquired), a strip of ground through the farm of the appellees, 33 feet in width on each side of an initial line parallel with and 6½ feet west of the Montague center line of location of the single track.

For these reasons, the decree must be reversed, and the case remanded to enable the circuit court to ascertain by survey, or otherwise, the exact quantity of land, if any, between the two rights of way, in order that the appellant, if so advised, may take necessary steps to acquire the intervening ground for its purposes.

*Reversed.*