HOWARD MORTON ALLEN, INDIVIDUALLY, ETC.

V.

ROGERS H. GREEN, ET AL.

Record No. 820770

Decided June 14, 1985, at Richmond

Present: All the Justices

Theodore J. Craddock (E. Marshall Frost; Caskie, Frost, Hobbs, Thompson, Knakal & Alford, on brief), for appellant.

E. Ronald Feinman, Jr. (Bell, Coward, Morrison & Spies, on brief), for appellees.

RUSSELL, J., delivered the opinion of the Court.

This appeal from a declaratory judgment turns on the construction given to an express reservation, contained in a deed to real property, of the right to remove a building from the land conveyed.

In 1970, Beatrice Allen Fisher owned a parcel of land, formerly in Campbell County but now in Lynchburg, containing 6.74 acres, improved by her antebellum brick home, a stone spring house, and a horse barn. She decided to convey the property to her niece by

marriage, Christine D. Allen, but to retain a life estate in a half-acre parcel carved out of the 6.74 acre tract, on which she would construct a small residence for herself.

At first Mrs. Fisher considered the purchase of a mobile home for this purpose, but later decided on a prefabricated twelve-sided building called a "Rondette." The "Rondette" was shipped to the site by trailer in twelve wedge-shaped prefabricated sections after a masonry foundation had been prepared. The sections were then erected on the foundation, bolted together, and finished into a dodecagonal structure which appears nearly circular.

Mrs. Fisher consulted an attorney, Edward J. Hotchkiss, Jr., to effect the conveyance to her niece. Mr. Hotchkiss died before trial, but his secretary testified that Mrs. Fisher referred to the "little round house" as a "portable thing," and said that she wanted it to be given to her nephew, Howard M. Allen, at her death. Christine Allen would have the remainder interest in the half-acre parcel after the life estate, but Howard Allen would have the right to remove the "Rondette."

Mr. Hotchkiss prepared a deed in accordance with these instructions, which contained the following language:

> The party of the first part reserves for and during the term of her life Parcel "B" containing 0.51 acre, as shown on the aforementioned plat, with the right to remove the portable building to be erected thereon at any time prior to her death, together with an easement over the 20-foot right of way as shown thereon, and the right to use the water from the spring located on Parcel "A", with the right of ingress and egress to the spring, and right to install a septic tank on Parcel "A", with the right of ingress and egress over Parcel "A" to service and repair the septic tank located thereon.

> Upon the death of the party of the first part, Parcel "B" shall vest in the owner or owners of Parcel "A", and the portable building on Parcel "B" shall become a part of the estate of the party of the first part with the right to the trustee and/or executor of such estate to remove the building therefrom.

Attached to the deed was a plat showing parcel "B" as a 0.51-acre rectangle along the south boundary of the larger tract, with a 20-foot-wide right-of-way providing access to Graves Mill Road.

The larger tract was shown as parcel "A," containing 6.23 acres. The plat showed no structures on parcel "B," but showed the large house and spring house on parcel "A." It was certified by a surveyor and was dated March 24, 1971. Mrs. Fisher executed the deed on April 30, 1971, and it was recorded on May 4, 1971.

Before executing the deed, Mrs. Fisher had decided on the "Rondette," and had a "cinderblock and rock" foundation completed and ready to receive the building by April 30, the day the deed was signed. Mrs. Fisher moved into the "Rondette" when it was completed and lived there until her death in 1980. It was the only structure ever placed on parcel "B."

Christine Allen thereafter married Morton Luther Bryant, the builder who had erected the "Rondette" for Mrs. Fisher. In 1978, the Bryants listed the large house for sale with a broker. The listing agreement described the land only as "Lot 5.6." A photograph of the antebellum house was attached to the listing agreement, and the only other structure mentioned in the listing was a "horse barn." On May 1, 1978, the Bryants executed a contract of sale to Rogers H. Green and E. Winston Cobb (now E. Winston Cobb Green), which described the property only by reference to the listing agreement. On May 15, 1978, the Bryants executed a deed to the Greens conveying to them both parcels "A" and "B," by reference to a different plat. The deed contained the following language:

> This conveyance is made subject to a life estate in the said Lot "B" containing 0.51 acres, in favor of Beatrice A. Fisher, as reserved in the next hereinafter mentioned deed, along with the right to the said Beatrice A. Fisher to remove the portable building to be erected thereon at any time prior to her death. . . . It was also provided in the next hereinafter mentioned deed that upon the death of the said Beatrice A. Fisher, Parcel "B" shall vest in the owner or owners of Parcel "A," and the portable building on Parcel "B" shall become a part of the estate of the said Beatrice A. Fisher with the right to the trustee and/or executor of such estate to remove the building therefrom.

The purchasers did not obtain a title examination to the property, but the reservation was noted by the attorney who examined title for the purpose of their purchase-money loan, and

was therefore included in the purchasers' deed and deed of trust. Mr. and Mrs. Green testified that they noticed the reservation in the deed at settlement, but asked no questions about it. Christine Allen Bryant testified that she told one or both of the Greens, before settlement, that the "land would go back to the property" at Mrs. Fisher's death, but that the "Rondette" would go to Mrs. Fisher's heirs. Mrs. Green denied that conversation. The Greens testified, over the executor's hearsay objection, that when they examined the property prior to purchase, a real estate agent told them that the "Rondette" would revert to the owners of parcel "A" on Mrs. Fisher's death.

When Mrs. Fisher died in May 1980, Howard Allen qualified as her executor and approached the Greens concerning the removal or sale of the "Rondette." The Greens made no response until August 1980, when they asserted ownership of it. The executor instituted this suit as a motion for declaratory judgment, seeking an adjudication that he was the owner of the building with the right to remove it from parcel "B." After a bench trial in September 1981, the court issued a written opinion. It held that the language "portable building to be erected" did not refer to the "Rondette," because it was in no sense "portable," that the language in question may have been intended to cover a mobile home which Mrs. Fisher had earlier contemplated, and that the plain language of her deed excluded any intention to reserve the "Rondette." A declaratory judgment was entered which holds that the "Rondette" has become a permanent improvement to parcel "B" and that it became the sole property of the Greens upon the termination of Mrs. Fisher's life estate. We granted the executor an appeal.

The Greens assign cross-error to the trial court's ruling admitting evidence of Mrs. Fisher's intention when she executed her deed to Christine Allen on April 30, 1971, arguing that the language of the deed is so clear and unambiguous as to exclude extrinsic evidence as to its meaning. We find no error in the trial court's decision to admit this evidence. An ambiguity exists when language is of doubtful import, admits of being understood in more than one way, admits of two or more meanings, or refers to two or more things at the same time. *Renner Plumbing* v. *Renner*, 225 Va. 508, 515, 303 S.E.2d 894, 898 (1983); *Berry* v. *Klinger*, 225 Va. 201, 207, 300 S.E.2d 792, 796 (1983). Here, the question whether the words "portable building to be erected" refer to the

mobile home Mrs. Fisher at first contemplated, or the "Rondette" she actually built, was the central issue to be resolved at trial. In context, the words admit of two different meanings and are thus ambiguous.

It is elementary that when language in a deed or other instrument is to be construed, "[t]he grantor's intention, as expressed in the instrument, must prevail unless contrary to some principle of law or rule of property." *Austin* v. *Dobbins*, 219 Va. 930, 936, 252 S.E.2d 588, 592 (1979). The instrument should be examined as a whole in order to determine the controlling intention. *Fitzgerald* v. *Fitzgerald*, 194 Va. 925, 929, 76 S.E.2d 204, 207 (1953). Here, the ambiguity consisted in uncertainty concerning the subject matter to which the language was intended to apply. This is a traditional reason warranting the admission of extrinsic evidence to identify, explain, or define the subject matter of a grant. *Klingstein* v. *Vaughan*, 149 Va. 147, 153, 140 S.E. 275, 276 (1927); *Midkiff* v. *Glass*, 139 Va. 218, 225, 123 S.E. 329, 331 (1924). Without parol evidence, it is frequently impossible to give effect to the intention of the parties concerning the subject matter to which their language was intended to apply. *South & W. R. Co.* v. *Mann*, 108 Va. 557, 560, 62 S.E. 354, 355 (1908).

There is no conflict in the evidence as to the intentions of the parties to the deed of April 30, 1971. That date is controlling because the intent of the parties to a deed must be ascertained with reference to the circumstances existing at the time of its execution. *French* v. *Williams*, 82 Va. 462, 467, 4 S.E. 591, 593 (1887). The uncontroverted evidence was that on April 30, 1971, Mrs. Fisher had rejected the idea of a mobile home, had decided to erect a "Rondette" on parcel "B," and had caused a masonry foundation to be prepared to receive it. It was the only structure within her contemplation when she executed the deed containing the questioned language. The legal secretary who recalled Mrs. Fisher's words and typed the deed, the grantee, Christine Allen Bryant, and Morton Bryant, the builder, all testified that the subject matter of the words "portable building to be erected" was the "Rondette," and nothing else. There was no other evidence on the subject. Thus, there was no evidence to support the trial court's finding that the reservation applied to something other than the "Rondette." A trier of fact may not arbitrarily disregard uncontradicted evidence of unimpeached witnesses which is not inherently incredible and not inconsistent with facts in the record, even

though such witnesses are interested in the outcome of the case. *Cheatham* v. *Gregory*, 227 Va. 1, 4, 313 S.E.2d 368, 370 (1984).

■ The Greens had constructive notice of the reservation in Mrs. Fisher's recorded April 30, 1971, deed because it formed a part of their vendor's chain of title. *Fox* v. *Templeton*, 229 Va. 380, 329 S.E.2d 6 (1985). They had actual notice of the reservation contained in the Bryants' 1978 deed to them because they examined it at settlement. That reservation provided that Mrs. Fisher's estate would own and that her executor was empowered to remove "the portable building *on* Parcel 'B.' " (Emphasis added.) There was only one building on parcel "B."

Whether the building was in fact "portable" was an issue of much debate at trial. The concept of portability is not necessarily inconsistent with the fixed nature of buildings. Many houses can be moved. Webster's Third New International Dictionary (3d ed. 1976) gives "portable schoolhouse" as an example of something portable. *Id.* at 1768. A builder who testified as an expert witness for the Greens conceded that the "Rondette" would be less expensive to move "as a whole" than a house of traditional construction, and alternatively that it could be more easily taken apart, moved in sections, and reassembled on another site than a traditional building.

■ The Greens ignored these extrinsic facts, coupled with the express reservations in their chain of title, at their peril. They were charged not only with notice of facts expressly stated in the recorded instruments, but also with other "matters therein suggested which might be disclosed upon prudent inquiry." *Chavis* v. *Gibbs*, 198 Va. 379, 382, 94 S.E.2d 195, 197 (1956); *Jameson* v. *Rixey*, 94 Va. 342, 348-49, 26 S.E. 861, 863 (1897). They had a duty to inquire as to sources of information reasonably disclosed by matters of record. At the time of their purchase in 1978, Mrs. Fisher was still alive and residing on the property conveyed. Christine Allen Bryant, Mrs. Fisher's grantee, was their grantor. By their own testimony, they chose to ignore these readily available sources of information, whose knowledge was made obvious by the recorded deeds. "Means of knowledge, with the duty of using them, are equivalent to knowledge itself." *Jameson*, 94 Va. at 348, 26 S.E. at 863.

Accordingly, we conclude that the trial court erred in holding the reservation inapplicable to the "Rondette," in declaring that the Greens had become its sole owners, and in determining that

Mrs. Fisher's executor lacked authority to remove it. The declaratory judgment will be reversed and the case remanded for entry of a declaratory judgment consistent with the views expressed herein, and for such further relief as may be requisite.

*Reversed and remanded.*