## CIRCUIT COURT OF FAIRFAX COUNTY

Casterline, Trustee

v.

Virginia Schlundt et al.

## July 30, 1992

## Case No. (Chancery) 121066

BY JUDGE GERALD BRUCE LEE

This matter came before the Court for trial on June 8, 1992. Having heard the evidence presented, the Court took the matter under advisement to determine the priority among two deeds of trust affecting the subject property. Having considered the evidence and the briefs from both parties and for the following reasons, the Court finds that the Defendants Millers' deed of trust has priority over the deed of trust held by Defendant, Reston Financial Services, Inc. ("RFS"). Consequently, as the Millers' deed of trust secures a $45,000.00 note, the Millers are entitled to the interpleader stake at issue, less attorneys fees and costs awarded by separate order to the Plaintiff stakeholders.

*Facts*

This case involves a stake interpleaded by the Plaintiffs, trustees under a deed of trust held by Chevy Chase Savings Bank, F.S.B. ("Chevy Chase"). Chevy Chase's foreclosure on property owned by Defendant, Virginia Schlundt, to satisfy a note owing from Schlundt to Chevy Chase resulted in surplus proceeds. After payment of the Chevy Chase loan from the proceeds, Plaintiffs held a surplus of $32,326.07. Encountering conflicting claims to the surplus from inferior lienors, Chevy Chase properly paid the surplus, plus an additional $221.65, for a total stake of $32,547.72, into the court for this interpleader action.

The Millers and RFS, who are beneficiaries of separate deeds of trust on the subject property, claim they properly stand in second priority after Chevy Chase to claim the surplus. The Millers claim as beneficiaries under a deed of trust (the "Miller deed of trust") dated April 28, 1989, which secured a note in the face amount of $45,000.00. RFS claims under a deed of trust (the "RFS deed of trust") against the subject property, dated September 21, 1989, which secured a note in the original amount of $18,200.00 plus interest and which RFS purchased from Deeds Management, Inc. While other subsequently recorded deeds of trust similarly encumber the property, they are inferior to the Miller and RFS deeds of trust and will not benefit from the surplus from the foreclosure sale proceeds.

While the RFS deed of trust bears an execution date of September 21, 1989, and was recorded among the land records subsequent to the Miller deed of trust, RFS claims priority over the Millers by virtue of a deed of subordination recorded, and then re-recorded with changes, among the land records. It is this deed of subordination, and its term of duration in particular, that rests at the heart of the present controversy.

The deed of subordination resulted from a loan transaction between Deeds Management, Inc., the original beneficiary under the RFS deed of trust, and Virginia Schlundt. Deeds Management loaned money to Schlundt and secured its note against Schlundt's property only after having arranged for the Millers to execute an instrument subordinating their deed of trust to the RFS deed of trust for a particular period of time. In return for the Millers' agreement to subordinate, Schlundt, then the owner of the subject property, agreed to pay 2.5 additional interest points on a note owing to the Millers.

The deed of subordination originally recorded in the land records by Mr. James Smalley, Schlundt's settlement attorney, specified an expiration date of December 31, 1989. The Millers testified that this date represents the term negotiated by the parties. The evidence shows that Smalley prepared the deed of subordination and sent it to the Millers for execution. The Millers understood the December 31, 1989, expiration date to reflect agreement among the parties to the shorter term of duration insisted upon by the Millers. Consequently, the Miller's executed the instrument before a notary and returned it to Smalley. The evidence further indicates that both Smalley and Mr. Todd Cregger, attorney for Deeds Management in that transaction,

reviewed and approved the deed of subordination as executed and that Smalley thereafter recorded the instrument among the land records.

Smalley and Cregger testified that in January, 1990, following the expiration of the deed of subordination by its own terms, Cregger brought to Smalley's attention what Smalley termed to have been a typographical or scrivener's error. Smalley testified that the parties had agreed to a 1991 expiration date rather than the 1989 date found on the deed of subordination. He and Cregger suggested that an agreement to subordinate one's deed for only two or three months in return for a 2.5 point increase on a $40,000.00 note would be absurd and that Deeds Management did not agree to such a term.

Consequently, Cregger and Smalley agreed to "correct" and re-record the deed of subordination. Smalley deleted the 1989 expiration date and inserted the year 1991 in its place. Placing an asterisk next to the line on which the date appeared, Smalley noted at the bottom of the page, "*Corrected to show proper date." Without re-executing the instrument and without first consulting the Millers, Smalley then re-recorded among the land records the altered deed of subordination. Smalley testified that it is standard procedure for one to correct such clerical errors and to re-record an instrument without re-executing it. He further testified that he later wrote to the Millers to inform them of the re-recorded deed. The Millers, however, responded that they never received such information from Smalley.

Thereafter, on March 16, 1990, Deeds Management assigned to RFS, without recourse, the Note from Schlundt owing to Deeds Management. Dr. Iyer, of RFS, testified that he purchased the note and deed of trust in reliance on the land records, which suggested to him that he would be in a second trust position until December 31, 1991. The Millers conceded that RFS may not have had actual knowledge of any potential defect in the deed of subordination and that he acquired the note in good faith. RFS contends that as a bona fide purchaser for value of the note and deed of trust, it enjoys a second trust position and is entitled to recover its share of the interpleader stake.

The Millers, on the other hand, contest the validity of the altered deed of subordination and insist on their priority under the originally executed and recorded instrument. They maintain that RFS was not a bona fide purchaser for value and that Deeds Management could

convey to RFS no better interest in the subject property than Deeds Management had itself. The Millers argue that Smalley's modification of the deed of subordination constituted a material alteration of the instrument and that the failure to procure newly acknowledged signatures from the Millers provided the Millers a defense against Deeds Management and, subsequently, against RFS.

## Analysis

At the outset, the Court finds that Virginia's Commercial Code of Commercial Paper and the holder in due course doctrine as it affects negotiable instruments, under which RFS asserts a defense against the Millers, has no bearing upon this case. As argued by the Millers, the holder in due course doctrine serves only to offer to one holding a negotiable instrument protection from claims against the instrument. In this case, the validity of the note purchased by RFS from Deeds management is not at issue; rather, this action pertains to the priority of interests among several, non-negotiable deeds of trust and raises the issue of whether RFS is a bona fide purchaser for value.

Moreover, the Court finds the evidence insufficient to prove that the 1991 expiration date for the deed of subordination properly reflected the agreement between Schlundt, Deeds Management, and the Millers. The issue is simply one of credibility. The only non-testimonial evidence of the agreement was the actual deed of subordination executed and acknowledged by the parties, which bore a expiration date of December 31, 1989. RFS' evidence consisted merely of the testimony of Smalley and Cregger that the Millers agreed to a 1991 expiration date. In fact, on cross-examination, Cregger conceded that he was not personally involved in the negotiations concerning the deed of subordination. Remaining is Smalley's and Cregger's testimony that a 1989 expiration date would be absurd in light of the corresponding increase in the interest rate on the Millers' note. RFS offered no written evidence of negotiations or other matter that would indicate an agreement by the Millers to a 1991 expiration date. Furthermore, the Court gives considerable weight to the fact that Smalley and Cregger reviewed and approved of the deed of subordination bearing the 1989 expiration date and thereafter caused the same deed to be recorded among the land records.

In contrast to RFS' evidence, the Millers' ardently maintained that they insisted upon a shorter duration and agreed only to the 1989

expiration date. Upon the evidence and testimony presented, the Court finds the evidence insufficient to contradict the 1989 expiration term found in the written and duly acknowledged instrument.

Consequently, the issue becomes whether RFS was a bona fide purchaser for value ("BFP") entitled to rely on the re-recorded deed of subordination. The BFP doctrine, in conjunction with the land recording system, serves to protect those who act in good faith to acquire property despite potential adverse claims to title of which the purchaser has no notice. BFP status affords no such protection, however, where a purchaser has notice of adverse claims to title to property. *See* 19 Michie's Jurisprudence, *Vendor and Purchaser* § 126.

The Court finds that RFS had inquiry notice of the Millers' interest in the property, and, consequently, does not enjoy the protection of a BFP. Virginia law charges a purchaser of property not only with notice of facts expressly disclosed among recorded instruments, but charges him also with other matters suggested in the recorded instruments which might be disclosed upon prudent inquiry. *See, e.g., Allen v. Green*, 229 Va. 588 (1985). Where the land records reveal suspicious circumstances affecting title to property, one bears a duty to further investigate the state of title. *Id.*

An examination of the land records at issue would have disclosed to RFS suspicious circumstances concerning the validity of the deed of subordination bearing the expiration date of December 31, 1991. The land records contained two deeds of subordination exactly the same in every respect save for the term of duration. An interested purchaser, such as RFS, could readily discern that someone had simply altered the identical instrument to contain a later expiration date and had re-recorded it without having the necessary parties re-execute the instrument. Notably, the modified instrument highlighted the change with the notation, "*Corrected to show proper date." Otherwise, the signatures, as well as the date of notarization, remained identical. The only change was that to the expiration date, a highly material term in the deed of subordination as it controlled the priority among parties thereto.

Under such circumstances, the Court finds that RFS had a duty to investigate further. In particular, to protect its own interest, the situation obligated RFS to inquire of the Millers, the parties adversely affected by the altered instrument. Such inquiry would have notified RFS that the Millers had a viable claim to title.

Finally, the testimony raised a question as to a potential oral contract, and breach thereof, between RFS and Mr. Miller by which Mr. Miller agreed to bid a price at the foreclosure sale which would be sufficient to cover the liens of both the Millers and RFS. The Court finds that this issue is not properly before the Court and declines to address that question in the present action.

For these reasons, the Court finds that the Millers are entitled to the entire interpleader stake at issue, less those costs and attorneys fees awarded by separate order to the Plaintiffs out of the interpleader stake.