COURT OF APPEALS OF VIRGINIA

Present:   Judges Humphreys, Beales and McCullough
Argued at Alexandria, Virginia


ANTHONY ARTHUR SABIO

                                                MEMORANDUM OPINION[*] BY
v.        Record No. 1099-14-4                  JUDGE ROBERT J. HUMPHREYS
                                                FEBRUARY 10, 2015

MARIBELLE BAUTISTA SABIO


                FROM THE CIRCUIT COURT OF CULPEPER COUNTY
                            Susan L. Whitlock, Judge

        Anthony C. Williams (Anthony C. Williams & Associates, PC, on
        briefs), for appellant.

        Ann M. Callaway (Ann M. Callaway, P.C., on brief), for appellee.


        Anthony Arthur Sabio ("husband") appeals four separate orders of the Culpeper County

Circuit Court (the "circuit court") involving his divorce from Maribelle Bautista Sabio ("wife").

Although husband asserts ten lengthy assignments of error in support of his appeal, husband's

arguments can be distilled to revolve around two issues:  (i) the circuit court's rulings in its two

May 18, 2014 orders and its June 3, 2014 order as to a disputed provision in the parties' property

settlement agreement, titled "Pensions," addressing husband's Thrift Savings Plan ("TSP")

account, Federal Employees' Retirement System ("FERS") pension, and Ready Reserve account;

and (ii) the circuit court's refusal to award attorney's fees to husband in its March 26, 2014

---

        [*] Pursuant to Code § 17.1-413, this opinion is not designated for publication.

order.[1]  For the following reasons, we affirm in part, and reverse and remand the judgment of the

circuit court in part.

<u>PROPERTY SETTLEMENT AGREEMENT</u>
<u>AND AMENDED PROPERTY SETTLEMENT AGREEMENT</u>

Husband's first nine assignments of error all revolve around whether the circuit court

correctly interpreted the meaning of "martial share" in the parties' agreement.  Specifically,

whether the court properly found that the term "martial share" in the amendment was ambiguous,

and as a result properly resorted to taking parol evidence to ascertain the parties' intent, and

[1] Specifically husband's ten assignments of error in support of his appeal are as follows:

(1) "The trial court erred in its Order dated June 3, 2014, when it heard parol evidence on terms of the parties' Amendment to Property Settlement Agreement that were unambiguous;"

(2) "The trial court erred by entering its Retirement Benefits Court Order (TSP) dated May 18, 2014 and its Court Order Acceptable for Processing (FERS) dated May 18, 2014, when the Amendment to Property/Separation Agreement clearly states '[h]usband shall have both QDROs prepared at Husband's expense within 30 days after official retirement from CIA;'"

(3) "The trial court erred in its Order dated June 3, 2014, when it found '[t]hat there is no evidence that either of the parties, by use of the term "marital share," intended to invoke the statutory definition of marital share as stated in § 20-107.3(G)(1); nor that they were aware of the statutory definition at the time the agreement was signed;'"

(4) "The trial court erred in its Order dated June 3, 2014, when it found '[t]hat the parties intended the Defendant's Thrift Savings Plan account to be divided equally as of the date of Defendant's retirement;'"

(5) "The trial court erred in its Order dated June 3, 2014, when it Ordered and Adjudged that "'Plaintiff is entitled to one-half of Defendant's Thrift Savings Plan account as of the date of Defendant's retirement;'"

(6) "The trial court erred in its Retirement Benefits Court Order (TSP) dated May 18, 2014 when it awarded Plaintiff a lump sum equal to Fifty Percent (50%) of Defendant's civilian Thrift Savings Plan total account balance as of April 1, 2014;"

(7) "The trial court erred in its Order dated June 3, 2014, when it found '[t]hat the parties intended that Plaintiff would receive one-half of Defendant's Federal Employees' Retirement System (FERS) pension as of the date of Defendant's Retirement;'"

(8) "The trial court erred in its Order dated June 3, 2014, when it Ordered and Adjudged that 'Plaintiff shall receive one-half of Defendant's Federal Employees' Retirement System (FERS) pension as of the date of Defendant's Retirement;'"

(9) "The trial court erred in its Court Order Acceptable for Processing (FERS) dated May 18, 2014 when it assigned to Plaintiff Fifty Percent (50%) of Defendant's self-only monthly annuity under FERS;" and

(10) "The trial court erred when it did not award attorney's fees in its Order dated March 26, 2014."

finally whether the circuit court erred in its findings of the parties' intent from the parol evidence.

Husband and wife married in 1995. When the parties were married, husband served in the United States Navy. In 2002, he joined the Secret Service. Beginning in 2007 until the present, husband serves in the CIA. The parties separated on August 24, 2009. Husband and wife executed a Property Settlement Agreement ("PSA") on May 3, 2010. The PSA was prepared by wife's attorney, and reviewed by husband's attorney. Under Paragraph 27, titled "PENSIONS" the parties agreed:

> Husband has a CIA TSP account with an account number ending in 74910, consisting of an FERS account and a Ready Reserve account. The FERS has an approximate balance of $80,437.02 and the Ready Reserve account has an approximate balance of $432.05. Wife shall receive one-half of the balance from these two accounts as of the date of the signing of this agreement, together with any gain or loss thereon, until the QDRO is prepared. Wife shall be allotted fifty percent of the marital share of FERS account and Ready Reserve account by way of a QDRO. Husband shall have both QDROs prepared at Husband's expense within 30 days of the entry of a final decree of divorce. If Husband has Military pension, Wife will receive fifty percent of the marital share.

Approximately one year after executing the PSA, on May 13, 2011, the parties executed an Amendment to the PSA (the "Amendment"). Wife drafted the Amendment without advice from counsel. The only change in the parties' agreement relevant to this appeal was Paragraph 3 of the Amendment, in which the parties agreed "to null and void previous PENSION AGREEMENT (Item # 27) under the original SEPARATION/PROPERTY AGREEMENT." The amended provision contained in Paragraph 3 of the Amendment read:

> Husband has a CIA TSP ACCOUNT with an account number ending in 74910, consisting of a FERS account and a Ready Reserve Account. Wife shall receive one-half of the balance from these two accounts on the date the Husband officially retires and starts his pension, together with any gain or loss thereon, until the QDRO is prepared. Wife shall be allotted fifty percent of the marital share of FERS and Ready Reserve account by way of a

QDRO. Husband shall have both QDROs prepared at Husband's expense within 30 days after official retirement from CIA. If Husband has Military pension, [w]ife will receive fifty percent of the marital share.

On April 18, 2013, wife filed for divorce. On June 11, 2013, the circuit court ordered that the terms of the PSA and the Amendment were "affirmed, ratified and incorporated by reference, but not merged" into a court order. On January 4, 2014, the circuit court entered a final order of divorce, but retained jurisdiction to enter orders as necessary to divide husband's FERS and TSP accounts as set forth in the PSA and Amendment.

Wife filed a notice that she would move for the entry of two QDRO orders dividing husband's retirement benefits. The circuit court continued the case because it found that resolving the issue "require[d] parol evidence." On April 1, 2014, the circuit court heard parol evidence on what the parties intended by the use of certain wording in the PSA and Amendment. The circuit court orally held that the parties did not intend to invoke the statutory definition of "martial share" but instead intended that wife would receive half the balance of the two accounts from the date husband retires rather than from the date that the parties signed the PSA.

On May 18, 2014, the circuit court signed two QDRO orders. The first, "Court Order Acceptable for Processing" divided the husband's FERS pension by assigning wife "50% of [husband]'s self-only monthly annuity under FERS." The second, "Retirement Benefits Court Order" awarded wife "a lump sum equal to fifty percent (50%) [of] the [husband]'s civilian [TSP] total account balance as of April 1, 2014." Husband filed objections to both orders.

On June 3, 2014, the circuit court entered another order finding that "certain terms"[2] of the Amendment were ambiguous. However, based on the parol evidence, it found that there was

_____

[2] The circuit court did not make a specific finding that it was allowing parol evidence exclusively on the meaning of "martial share," and its June 3, 2014 order simply stated that it "heard evidence on the issue of the intended meaning of certain wording in the agreement."

- 4 -

no evidence that either of the parties, by the use of the term "marital share," intended to invoke the statutory definition of marital share as stated in Code § 20-107.3(G)(1), "nor that they were even aware of the statutory definition at the time the agreement was signed." Additionally, the circuit court found that the parties intended husband's TSP account to be divided equally as of the date of his retirement and that wife would receive one-half of husband's FERS pension as of the date of his retirement. Based on those findings, the circuit court ordered that: (1) Wife is entitled to one-half of husband's TSP account as of the date of husband's retirement; and (2) wife shall receive one-half of husband's FERS pension as of the date of husband's retirement.

Husband appeals the entry of the two May 18, 2014 QDRO orders (assignments of error two, six, and nine) and the June 3, 2014 order (assignments of error one, three, four, five, seven, and eight).

## I.

For the reasons that follow, we hold that the circuit court erred in finding that the term "martial share" was ambiguous because the words of the parties' entire agreement unambiguously express an intention to invoke the statutory definition of "marital share." Therefore, the circuit court erred in hearing parol evidence on the term's intended meaning.

"Property settlement agreements are contracts and are subject to the same rules of construction that apply to the interpretation of contracts generally." Southerland v. Estate of Southerland, 249 Va. 584, 588, 457 S.E.2d 375, 378 (1995). The function of the court is to determine "what did the parties agree to as evidenced by their contract." Irwin v. Irwin, 47 Va. App. 287, 293, 623 S.E.2d 438, 441 (2005). "The guiding light in the construction of a contract is the intention of the parties as expressed by them in the words they have used, and courts are bound to say that the parties intended what the written instrument plainly declares." Id. In other words, "[i]f the terms of the parties' agreement are contained in a clear and explicit

writing, that writing is the sole memorial of the contract and the sole evidence of the agreement." Galloway Corp. v. S.B. Ballard Constr. Co., 250 Va. 493, 502, 464 S.E.2d 349, 354 (1995). As such, if the agreement is unambiguous, "parol evidence *cannot* be used to explain the written contractual terms." Id. (emphasis added).

"An ambiguity exists when language is of doubtful import, admits of being understood in more than one way, admits of two or more meanings, or refers to two or more things at the same time." Allen v. Green, 229 Va. 588, 592, 331 S.E.2d 472, 475 (1985). Any ambiguities in a written contract "must be construed against the drafter of the agreement." Doctors Co. v. Women's Healthcare Assocs., 285 Va. 566, 573, 740 S.E.2d 523, 526 (2013).

> It is elementary that where the terms of a contract are thus susceptible of more than one interpretation, or an ambiguity exists, or the extent and object of the contract cannot be ascertained from the language employed, "parol evidence may be introduced to show what was in the minds of the parties at the time of the making of the contract and to determine the object on which it was designed to operate."

Young v. Schriner, 190 Va. 374, 379, 57 S.E.2d 33, 35 (1950).

"The question whether contract language is ambiguous is one of law, not fact." Plunkett v. Plunkett, 271 Va. 162, 166-67, 624 S.E.2d 39, 41 (2006). Thus, "[w]e are not bound by the trial court's construction of contract terms, but rather, 'we have an equal opportunity to consider the words within the four corners of the disputed provision.'" T.M. Delmarva Power, L.L.C. v. NCP of Va., L.L.C., 263 Va. 116, 119, 557 S.E.2d 199, 200 (2002) (quoting Wilson v. Holyfield, 227 Va. 184, 188, 313 S.E.2d 396, 398 (1984)).

In this case, the circuit court erred when it found that the term "martial share" was ambiguous, and therefore improperly heard extrinsic evidence of the parties' intent. Although the parties disputed what was meant by their use of the term "martial share" in the Amendment, "[a] contract is not ambiguous merely because the parties disagree as to the meaning of the terms

used." Plunkett, 271 Va. at 167, 624 S.E.2d at 42. Here, a conflict does not exist in the written agreement itself. The meaning of "martial share" can be ascertained within the four corners of the writing. The use of the term "marital share" in Paragraph 3 of the Amendment is not of "doubtful import," or susceptible to being "understood in more than one way," or has "two or more meanings," or "refers to two or more things at the same time." Allen, 229 Va. at 592, 331 S.E.2d at 475. The language of the parties' entire agreement unambiguously expresses an intention to apply the statutory definition of "marital share."

Code § 20-107.3(G)(1) defines "marital share," as it applies to any pension, profit-sharing, or deferred compensation plan or retirement benefit, as "that portion of the total interest, the right to which was earned during the marriage and before the last separation of the parties, if at such time or thereafter at least one of the parties intended that the separation be permanent." This Court has held that the language in Code § 20-107.3(G)(1) can be "implemented through the use of a simple formula." McGinniss v. McGinniss, 49 Va. App. 180, 185-86, 638 S.E.2d 697, 700 (2006). "'The number of years that the spouse was in the pension plan while in the marriage serves as the numerator and the total number of years in the pension plan serves as the denominator. This fraction establishes the marital share of the pension as defined by the statute.'" Id. (quoting Mosley v. Mosley, 19 Va. App. 192, 198, 450 S.E.2d 161, 165 (1994)).

Paragraph 3 of the Amendment nullifies and replaces Paragraph 27 in the PSA. However, Paragraph 28, titled "HUSBAND'S MILITARY RETIREMENT," was unaltered by the Amendment. Paragraph 28 states in part:

> The marital share of the Husband's military retirement shall be determined by dividing the number of months of creditable military service by Husband during the marriage and prior to the date of final separation of the parties by the total number of months of creditable service earned by Husband upon the date of his retirement.

The language in Paragraph 28 defining marital share directly mirrors the statutory formula articulated in the Code and explained by caselaw. Paragraph 28 requires that the "marital share" of the husband's military retirement shall be determined by "dividing the number of months of creditable military service by Husband during the marriage and prior to the date of final separation of the parties" [*the number of years that the spouse was in the pension plan while in the marriage serves as the numerator*] "by the total number of months of creditable service earned by Husband upon the date of his retirement" [*the total number of years in the pension plan serves as the denominator*]. <u>See</u> <u>McGinniss</u>, 49 Va. App. at 185-86, 638 S.E.2d at 700.

This Court must construe terms in a manner consistent with the entire contract viewed as a whole. <u>See</u> <u>Plunkett</u>, 271 Va. at 167, 624 S.E.2d at 42. The language of the Amendment and the PSA do not indicate that a different definition of "marital share" should apply to Paragraph 3 than the definition of "marital share" that is explicitly defined in Paragraph 28. Therefore, absent any indication to the contrary, the parties' use of the term "marital share" in a manner consistent with Code § 20-107.3(G)(1) in the paragraph immediately following the disputed provision demonstrates an intent to apply the statutory definition of "martial share" within the four corners of the entire agreement.

Moreover, in construing contracts "[n]o word or clause in the contract will be treated as meaningless if a reasonable meaning can be given to it, and there is a presumption that the parties have not used words needlessly." <u>D.C. McClain, Inc. v. Arlington Cnty.</u>, 249 Va. 131, 135-36, 452 S.E.2d 659, 662 (1995); <u>see</u> <u>also</u> <u>Daugherty v. Diment</u>, 238 Va. 520, 524, 385 S.E.2d 572, 574 (1989) ("In construing the documents as a whole, the court will not treat any word or clause as meaningless if any reasonable interpretation consistent with the other portions of the contract can be ascribed to it."). If this Court were to construe the Amendment to mean that the parties intended wife to receive 50% of husband's *total* benefits upon his retirement, the

term "marital share" would be rendered totally meaningless in the phrase: "fifty percent of the marital share of FERS and Ready Reserve account." If the parties intended for wife to receive fifty percent of the *total* amount they could have simply stated: "fifty percent of the ~~marital share of~~ FERS and Ready Reserve account."

Wife argues that an ambiguity exists as to the meaning of "martial share" in the Amendment because the phrase "Wife shall receive one-half of the balance from these two accounts on the date the Husband officially retires and starts his pension," followed by "Wife shall be allotted fifty percent of the marital share of FERS and Ready Reserve account," creates a conflict. Specifically, she argues that it creates an ambiguity that justifies the admission of parol evidence because the plain language in the first phrase clearly indicates an intention that the parties intended to divide the retirement accounts as of the date husband retires; whereas the use of the term "marital share" later in the same paragraph suggests a different outcome based on the statutory definition of "marital share" in Code § 20-107.3(G)(1).

Although wife presents one possible construction of the Amendment that contains inconsistent outcomes, "'[w]hen two provisions of a contract seemingly conflict, if, without discarding either, they can be *harmonized so as to effectuate the intention of the parties as expressed in the contract considered as a whole*, this should be done.'" Plunkett, 271 Va. at 168, 624 S.E.2d at 42 (emphasis added) (quoting Ames v. Am. Nat'l Bank of Portsmouth, 163 Va. 1, 39, 176 S.E. 204, 217 (1934)). Here the first and second phrases that are seemingly in conflict "may be harmonized without disregarding any of its provisions or doing violence to any of its language." Id. As explained above, the PSA and the Amendment viewed as a whole, demonstrate an intention to apply the statutory definition of marital share to their use of the term in the contract. Therefore, in harmonizing the two phrases, the first phrase indicates *when* wife

- 9 -

shall receive her share, whereas the second phrase modifies the first phrase to indicate *what* share wife shall receive at the time specified by the first phrase.

Finally, and importantly, in construing contracts, "[w]ords that the parties use are given their usual, ordinary, and popular meaning." D.C. McClain, Inc., 249 Va. at 135, 452 S.E.2d at 662. Here the ordinary meaning of "marital share" is consistent with the statutory definition of "marital share" and entirely contradicts wife's position that "marital share" was intended to be husband's *total* retirement benefits, including those incurred after the parties' separation. Webster's Third New International Dictionary 1382, 2087 (1993), defines "marital" as "relating to marriage or the marriage state" and "share" as "a portion belonging to, due to, or contributed by an individual," "one's full or fair portion," or "the part allotted or belonging to one of a number owning together an property or interest." Similarly, Black's Law Dictionary 1112, 1585 (10th ed. 2010), defines "marital" as "relating to, or involving the marriage relationship," and "share" as "an allotted portion owned by, contributed by, or due to someone." Read together, both Webster's and Black's support the proposition that the ordinary meaning of "marital share" is one's allotted portion that relates to the marriage relationship. In other words, a martial share relates to the parties' portion of an interest that was accrued during the course of the marital relationship.

For all the reasons stated above, the term "marital share" as used in the Amendment is unambiguous and reflects an intention to apply the statutory definition articulated in Code § 20-107.3(G)(1). Therefore, the circuit court erred in admitting parol evidence on the parties' intent as to that term's meaning.

## II.

On appeal, husband argues that the subject matter of the Amendment is *unambiguous*—it does not actually divide the CIA TSP but only divides the FERS and the Ready Reserve

account.[3]  Because husband raises this argument for the first time on appeal, his assertion fails to

meet the requirements of 5A:18, and because husband makes no request to invoke any exception

to Rule 5A:18, we therefore do not address his arguments related to this issue.  See Edwards v.

Commonwealth, 41 Va. App. 752, 761, 589 S.E.2d 444, 448 (2003) (en banc) (holding that this

Court "will not consider, *sua sponte*, a 'miscarriage of justice' argument under Rule 5A:18").

                                                   III.

        Husband's second, sixth, and ninth assignments of error all relate to the circuit court's

entry of the two QDRO orders on May 18, 2014.  The first order, "Court Order Acceptable for

Processing" divided the husband's FERS pension by assigning wife "50% of [husband]'s self-

only monthly annuity under FERS," and the second, "Retirement Benefits Court Order" awarded

wife "a lump sum equal to fifty percent (50%) [of] the [husband]'s civilian Thrift Savings Plan

total account balance as of April 1, 2014."  The circuit court's June 3, 2014 order held that wife

was entitled to one-half of husband's TSP account as of the date of husband's retirement and that

wife shall receive one-half of husband's FERS pension as of the date of husband's retirement.

All three orders were entered after the court heard parol evidence of the parties' intent.  It is

unclear from the record whether the court's June 3, 2014 order was intended to replace or

supplement the two May 18, 2014 orders.  However, we need not resolve any discrepancies in

the circuit court's three orders because we are reversing and remanding based upon the court's

improper admission of parol evidence.

---

        [3] In the circuit court, husband argued exactly the opposite of what he argues on appeal.
At the hearing he argued that the Amendment was "internally inconsistent and inherently
ambiguous," because it was factually inaccurate as to what retirement accounts were subparts of
others.  Specifically, he claimed that although the Amendment stated that husband had a CIA
TSP account that consisted of a TSP account and a Ready Reserve account, husband in fact has a
FERS account *and* a TSP account and that the Ready Reserve Account was unrelated to his
service in the CIA.

On June 17, 2013, the circuit court entered a *pendente lite* order that awarded support to wife and awarded her $5,345 in attorney's fees *pendente lite*. On March 26, 2014, the circuit court reversed itself after finding that the PSA precluded an award of attorney's fees to either party except in the event of a breach or violation of that agreement. In this tenth assignment of error, husband argues that the circuit court abused its discretion by failing to award him attorney's fees that he incurred while litigating the reimbursement of erroneously awarded *pendente lite* attorney's fees.

The terms of the PSA do not support husband's proposition. Pursuant to Code § 20-109(C),

> [i]n suits for divorce, annulment and separate maintenance . . . if a stipulation or contract signed by the party to whom such relief might otherwise be awarded is filed before entry of a final decree, *no decree or order* directing the payment of . . . counsel fee . . . *shall be entered except in accordance with that stipulation or contract*.

(Emphasis added). Accordingly, the clear and explicit terms of the parties' contract govern this issue and the circuit court did not have the authority to enter an order inconsistent with those terms. See Rutledge v. Rutledge, 45 Va. App. 56, 61-62, 608 S.E.2d 504, 507 (2005). Paragraph 61 of the PSA provides that "Each party agrees to be entirely responsible for the respective legal fees which each of them have incurred or may hereafter incur." However, "in the event that a breach or violation" of the PSA should occur, the court should require the substantially non-prevailing party to reimburse costs and fees incurred by the substantially prevailing party. Because neither party was before the circuit court due to an alleged breach or violation of the PSA, pursuant to the terms of the PSA itself husband is "entirely responsible" for legal fees he may have incurred. Therefore, the circuit court did not abuse its discretion when it did not award

- 12 -

husband attorney's fees that he incurred litigating the erroneously awarded *pendente lite* attorney's fees.

Wife asks this Court to award her attorney's fees necessary for the defense of this appeal. As stated above, the parties' PSA governs this issue. Because there is no allegation that husband breached or violated the PSA, wife is similarly "entirely responsible" for legal fees and costs she may have incurred on appeal. We therefore deny wife's request.

CONCLUSION

We hold that the circuit court erred in finding that the term "martial share" was ambiguous because the language of the parties' entire agreement unambiguously expresses an intention to apply the statutory definition of "marital share." Consequently, the circuit court erred in allowing parol evidence on the parties' intent. Accordingly, we reverse the judgment of the circuit court and remand the case to the circuit court for the entry of amended orders consistent with this Court's opinion. Additionally, we affirm the circuit court's denial of husband's request for payment of his attorney's fees, and we deny wife's request for appellate attorney's fees and costs.

Affirmed in part,
and reversed and remanded in part.